# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

JC HILL, et al., )
                                     Plaintiffs, )
                                         -vs- )        Case No. CIV-09-07-R
KAISER-FRANCIS OIL COMPANY, )
                                      Defendant. )

## ORDER

The individual Plaintiffs, J.C. Hill and Alice Hill, have moved for class certification pursuant to Rule 23, F.R.Civ.P. Doc. No. 55. Defendant Kaiser-Francis Oil Company filed its response opposing class certification [Doc. No. 86], Plaintiff filed a reply [Doc. No. 95] and Kaiser-Francis filed a sur-reply [Doc. No. 100]. On September 25 and September 28, 29 and 30, 2009, the Court conducted an evidentiary hearing. *See* Minute Entries [Doc. Nos. 108,109, 110 & 111]. Thereafter, pursuant to the Court's Order, Plaintiffs and Defendant filed their proposed findings of fact and conclusions of law [Doc. Nos. 117 & 122]. On June 7, 2010, the Court heard closing arguments of the parties. *See* Minute Entry [Doc. No. 143]. The Court now addresses the motion for certification.

Plaintiffs J.C. and Alice Hill own mineral interests in Section 31, Township 9 North, Range 9 West, Washita County, State of Oklahoma, which interests are subject to one or more oil and gas leases in favor of Kaiser-Francis or its predecessors. Defendant Kaiser-Francis is an oil and gas exploration company incorporated in Delaware and headquartered in Tulsa, Oklahoma. Kaiser-Francis is the operator and/or has sold hydrocarbons directly or

by an affiliate from wells in Section 31-9N-15W, Washita County in which Plaintiffs own royalty interests. Plaintiffs have received royalty payments from Kaiser-Francis since 1979. Defendant Kaiser-Francis operates 1,150 wells in Oklahoma and owns working interests in 3,900 wells in Oklahoma. Kaiser-Francis has two affiliated companies: Texas Southwest Gas Corporation ("TSW") which Kaiser-Francis claims performs "first purchaser" duties for 30-40 percent of Kaiser-Francis' production, and Senex Pipeline Company which, according to Kaiser-Francis, performs gas gathering functions in part of the state. Neither affiliate has any employees and duties purportedly performed by the affiliates are in fact performed by Kaiser-Francis employees.

Kaiser-Francis installs and operates various production equipment on the leased premises that it claims is designed to put the gas in a condition suitable for delivery into the first purchaser's pipeline at the well site. Kaiser-Francis does not charge the royalty owners for the costs of any on-lease production activities performed by it. Kaiser-Francis contends that the gas is marketable at the well sites and is sold at the well sites. Thirty to forty percent of Kaiser-Francis' production (whether from wells it operates or attributable to its working interests in non-operated wells where it chooses to market its own gas) is sold to TSW and the remainder is sold to independent gathering/marketing companies or midstream purchasers. These "sales" are accomplished by percentage of proceeds contracts (by virtue of which Kaiser-Francis receives a percentage of the proceeds the midstream purchaser receives for the gas at the interstate pipeline connect) or by contracts in which the price is tied to an interstate pipeline index. In either case, the price Kaiser-Francis receives is based

upon the price received by the midstream purchaser at the interstate pipeline minus the fees or a percentage of the gas sales proceeds received by the midstream purchaser for gathering, compression, dehydration, treating, processing and transporting the gas. TSW also charges a "marketing fee" of $100 per well per month or one percent of the gross sale per month if it is less than $100 and deducts that amount from the amount it receives for the gas from the downstream purchaser and retains it. Kaiser-Francis pays royalty owners for gas attributable to their royalty interests based only on what Kaiser-Francis receives from TSW or the midstream purchaser.

Plaintiffs contend that the gas is not in a marketable condition until the services performed by TSW or the midstream purchasers are completed and the gas is of interstate pipeline quality; that Kaiser-Francis has a duty to perform those services; that the price reported to Kaiser-Francis' royalty owners for a wellhead sale is actually the price paid by the interstate pipeline or third-party purchaser downstream after deductions for gathering, compression, dehydration, treating, processing and transporting the gas, *i.e.,* the performance of services necessary to make the gas marketable; and that deductions for those services or production costs are in effect improperly taken from Plaintiffs' royalty payments. Plaintiffs also contend that the quantity of gas attributed to their royalty interests by Kaiser-Francis improperly does not include gas given to midstream purchasers to be used as fuel to dehydrate, compress and move the gas to market and that Kaiser-Francis also improperly fails to pay royalty interest owners for their proportionate interests in natural gas liquids (NGLs) and condensate which are recovered from the raw gas and sold.

Plaintiffs claim that by calculating and paying royalty in the manner they have, in effect deducting the costs of gathering, compression, dehydration, treating, processing and marketing from royalty, causing royalty owners to improperly bear their share of the costs of making the gas marketable, and by failing to pay the royalty owners their percentage of the proceeds from the sales of NGLs and condensate, Defendant Kaiser-Francis breached the lease contracts, including the implied duty to market the gas, and breached fiduciary duties owed to Plaintiffs. Plaintiffs also claim that Defendant Kaiser-Francis committed actual and constructive fraud by misrepresenting on its check stubs the deductions taken from their royalty payments as $0.00 and the "wellhead price" and by failing to disclose its nonpayment of royalty for NGLs and/or condensate obtained or sold by Kaiser-Francis. Plaintiffs claim that by misrepresenting the amount of deductions on its royalty payment check stubs, Defendant Kaiser-Francis also violated the Oklahoma Production Revenue Standards Act ("PRSA"), Okla. Stat. tit. 42, § 570.12. Additionally, Plaintiffs claim that Defendant Kaiser-Francis' conduct which forms the basis of Plaintiffs' other claims unjustly enriched Kaiser-Francis to Plaintiffs' detriment. Plaintiffs also seek an accounting from Kaiser-Francis for 100 percent of the production from the wells Kaiser-Francis operates and in which it has non-operating working interests and injunctive and declaratory relief, enjoining Kaiser-Francis from further production from the properties until it has fully met its royalty obligations and defining Kaiser-Francis' ongoing duties to Plaintiffs.

Plaintiff's seek certification of a class defined as follows:

> All persons who own or owned minerals subject to an oil and gas lease in the State of Oklahoma from January 1, 2002 to the present (except agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma, and/or persons whom plaintiffs' counsel are, or may be, prohibited from representing pursuant to the Rules of Professional Conduct and/or overriding royalty owners and unleased mineral owners who have elected under an OCC forced pooling order to take the bonus/royalty option) wherein (1) they received royalty on the sale and disposition of gas from Oklahoma properties marketed and/or sold by Kaiser-Francis and/or its affiliates; and (2) their royalty payments were reduced as a result of the reduction of production volumes and/or production proceeds for marketing, gathering, compressing, dehydrating, treating, processing, or transporting of hydrocarbons produced from the unit.

To obtain certification of this action as a class action under Federal Rule of Civil Procedure 23, Plaintiffs must first establish that the four requirements of F.R.Civ.P. 23(a), numerosity, commonality, typicality and adequacy of representation, are clearly met, "under a strict burden fo proof." *See* F.R.Civ.P. 23(a); *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006)(quoting *Reed v. Bowen*, 849 F.2d 1307, 1308 (10th Cir. 1988)). If all four of those requirements are clearly met, the Court must determine whether Plaintiffs have also satisfied one of the conditions of either Rule 23(b)(1), (2) or (3) that they assert are applicable. *See Valario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009), *citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The Court possesses "significant latitude in deciding whether or not to certify a class." *Vallario v. Vandehey,* 554 F.3d 1259, 1264 (10th Cir. 2009), citing, *Shook v. Board of County Commissioners*, 543 F.3d 597, 603 (10th Cir. 2008)(*Shook II*).

**Numerosity**

To satisfy the first requirement of Rule 23(a), F.R.Civ.P., Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." F.R.Civ.P. 23(a)(1). The proposed class in this case consists of at least approximately 29,000 royalty owners and perhaps as many as 44,000. There is no dispute that the numerosity requirement is met.

**Commonality**

To establish the commonality prerequisite for class certification, Plaintiffs must show that "there are questions of law or fact common to the class." F.R.Civ.P. 23(a)(2). To meet this requirement, members of the putative class must "possess the same interest and suffer the same injury." *Trevizo v. Adams*, 455 F.3d at 1163, *quoting General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). A common question is one that can be resolved for every class member in a single hearing and does not require consideration of the individual circumstances of each class member. *Thorn v. Jefferson-Pilot Life Insurance Co.*, 445 F.3d 311, 319 (4th Cir. 2006). There need only be one issue of law or fact common to all class members to satisfy the element of commonality. *See Hallaba Worldcom Network Services*, 196 F.R.D. 630, 635 (N.D. Okla. 2000).

Defendant Kaiser-Francis does not dispute that there are questions of law and fact common to the class. Moreover, the Court finds that there are many questions of law and fact common to all class members, among which are the following: When is gas in a marketable condition; whether Kaiser-Francis has deducted costs incurred to put the gas in

6

a marketable condition and whether those deductions are improper because of the lessee's duty to market; whether transportation expenses are deductible; whether Kaiser-Francis calculated royalty payments on less than the actual sales price of gas and whether it has the right to do so; whether Kaiser-Francis has the right to use percentages of gas, NGLs and condensate to pay third-party service providers without paying royalty on the amounts thereof used; whether Defendant Kaiser-Francis owes fiduciary duties to the class members and whether it breached those duties by the manner in which it calculated and paid the royalty owner putative class members; whether Defendant Kaiser-Francis violated the Production Revenue Standards Act, Okla. Stat. tit. 52, § 570.12 in the manner in which it reported deductions on its check stubs to royalty owners; whether Defendant Kaiser-Francis' duty to market is owed to all putative class members regardless of the terms of their leases and whether Kaiser-Francis breached that duty; and whether Defendant Kaiser-Francis was unjustly enriched as a result of the manner in which it calculated and paid royalty and/or through the use of its affiliates to market or gather the gas and perform other services. As in the *Naylor Farms* case, whether Defendant Kaiser-Francis breached its obligations under the various leases "by incorrectly calculating royalties is an issue that undergirds every claim." *Naylor Farms v. Anadarko OGC Company*, CIV-08-668-R (W.D. Okla. Aug. 26, 2009) at p. 10. "[T]he issue is not whether there were appropriate post-production costs that might be shared by the royalty owners, but rather were hidden production costs [and production costs that were disclosed] unfairly borne by the royalty owners." *Id.* The fact that individual damage determinations will be necessary in this case does not destroy the

7

existence of commonality. *See Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 427-28 (4th Cir. 2003) *citing, inter alia*, F.R.Civ.P. Advisory Committee Note to 1996 Amendment, subdivision (c)(4).

## **Typicality**

The typicality requirement limits the class claims to those "fairly encompassed" by the claims of the named plaintiffs. *General Telephone Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319, (1980). A named plaintiff's claim is "typical" when it arises out of the same event, practice or course of conduct of the defendant, and is based on the same legal theory on which the putative class claims are predicated. *See Baby Neal v. Casey*, 43 F.3d 48, 57-58 (3rd. Cir. 1994). Typicality is satisfied when the named class representatives will by establishing their own claims establish the bulk of the elements of each class member's claims. *See Brooks v. Southern Bell Tel. & Tel. Co.,* 133 F.R.D. 54, 58 (S.D. Fla. 1990), *citing General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Claims may be typical without being identical. Thus, "typicality may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class." *In re Four Season Securities Laws Litigation*, 59 F.R.D. 667, 681 (W.D. Okla. 1973), *rev'd on other grounds*, 502 F.2d 834 (10th Cir. 1974). As with commonality, individual damage questions do not prevent class action certification. *In re Texas International Securities Litigation*, 114 F.R.D. 33, 44 (W.D. Okla. 1987).

Where, as here, "all royalty owners, regardless of well location, are treated identically by defendant for purposes of royalty payments," *Beer v. XTO Energy, Inc.*, 2009 WL 764500 at * 5 (W.D. Okla. Mar. 20, 2009)(No. CIV-07-789-L) and establishment of the individual Plaintiffs' claims will establish the bulk of the elements of each class member's claims, the typicality requirement is met. Indeed, in this case, Defendant Kaiser-Francis concedes that the representative Plaintiffs' claims are typical of the claims of the class because, *inter alia*, the individual Plaintiffs have royalty interests in both Kaiser-Francis operated wells and in wells not operated by Kaiser-Francis. Defendant Kaiser-Francis Oil Company's Proposed Findings of Fact and Conclusions of Law at Conclusion of Law ¶ 9, p. 34. The Court concludes that the individual Plaintiffs' claims are typical of those of the class they seek to represent.

## **Adequacy of Representation**

The final requirement of Rule 23(a), F.R.Civ.P., is that the named Plaintiffs and their counsel must establish that they will adequately represent the class. "Resolution of two questions determines legal adequacy: (1) do the named Plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002)(quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (10th Cir. 1998)).

In this case there is no evidence of any existing or potential conflicts of interest between the representative Plaintiffs and/or their counsel and the class. The Court finds that

9

Plaintiffs J.C. and Alice Hill are knowledgeable royalty interest owners who have actively assisted their attorneys in the prosecution of this case, given their depositions in this case and testified at the evidentiary hearing on Plaintiffs' Motion to Certify Class. Although Plaintiff J.C. Hill thought that the suit against Kaiser-Francis only involved wells in Section 31, did not think the Kaiser-Francis check stubs were confusing, thought all of his gas was marketable at the well and did not have good recall concerning previous litigation in which he was involved, Mr. Hill in his testimony demonstrated adequate knowledge of the facts and understanding of the issues in this case to adequately represent the class. Both of the Plaintiffs have the interest, willingness and capacity to serve as class representatives to vigorously prosecute the action on behalf of the class. Additionally, the Court finds that Plaintiffs' lead counsel, R. Brad Miller, is an experienced trial lawyer who is currently involved in three class action lawsuits involving oil and gas issues and whose law firm is involved in six class actions. The same is true of Michael L. Darrah and Edd Pritchett, Jr., two of Plaintiffs' other lawyers in this case. Additionally, those lawyers have associated with the attorney who represented the Plaintiff class in *Bridenstine v. Kaiser Francis Oil Co.,* a royalty owners' class action previously litigated in Oklahoma. Plaintiffs' counsel's performance to date both in their pleadings and briefs and at the evidentiary hearing on the motion to certify class leaves no doubt but that they will ably and vigorously prosecute this action on behalf of the class.

## **Rule 23(b)**

Having concluded with regard to Plaintiffs' claims that Plaintiffs have satisfied the requirements of Rule 23(a), the Court must now determine whether this action qualifies for class certification under F.R.Civ.P. 23(b)(1)(A), (b)(1)(B), (b)(2) and/or (b)(3). Plaintiffs assert that class certification is appropriate under each of those subsections of Rule 23(b), F.R.Civ.P. The Court concludes that Plaintiffs have established that a class action is appropriate under Rule 23(b)(3) and, accordingly, the Court finds it unnecessary to address the applicability of Rule 23(b)(1)(A) or (B) and Rule 23(b)(2), F.R.Civ.P.

Rule 23(b)(3) of the Federal Rules of Civil Procedure provides that a class action may be maintained if Rule 23(a) is satisfied and the Court finds that questions of law or fact common to members of the class predominate over any questions affecting only individual class members and that a class action is superior to other methods available for fairly and efficiently adjudicating the controversy. F.R.Civ.P. 23(b)(3). Factors pertinent to the superiority prong include the class members' interests in individually controlling the prosecution of separate actions; the extent and nature of any litigation concerning the controversy already begun; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing the class. F.R.Civ.P. 23(b)(3)(A), (B), (C) & (D).

The "predominance" element is concerned with whether the named plaintiffs can offer proof on a class-wide basis. *See Hyderi v. Washington Mutual Bank, FA,*, 235 F.R.D. 390, 398 (N.D. Ill. 2006). Thus, predominance and commonality overlap considerably. *See Newberg on Class Actions* § 4.23. However, the predominance requirement of Rule 23(b)(3)

11

is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d. Cir. 2002). Predominance is ordinarily satisfied when plaintiffs have alleged a common course of conduct by the defendant. *In re Janney Montgomery Scott LLC Financial Consultant Litigation*, 2009 WL 2137224 (E.D. Pa. 2009). In this case, Plaintiffs' claims arise from Kaiser-Francis' implied duty to market owed to all of its royalty owners implicit in every lease and/or from Kaiser-Francis' uniform, statewide method of calculating, reporting and paying royalty such that the element of predominance is satisfied, and class treatment is appropriate for all of Plaintiffs' claims except their fraud claims, as will be discussed later. *See S. Gensler,* "Class Certification and the Predominance Requirement Under Oklahoma Section 2023(B)(3)," 56 Okla. L. Rev. 289, 306 (2003). Questions of law and fact common to all class members which predominate over individualized questions pertaining to Plaintiffs' various claims except their fraud claims including the following: 1) When is gas "marketable" or how is the term "marketable" defined for purposes of determining when gas is a "marketable product" or in a "marketable condition"? 2) What processes and costs thereof are necessary to make gas marketable? 3) May a lessee/producer indirectly pay a midstream purchaser to perform gathering, compression, dehydration, processing and treating

by agreeing to accept as a purchase price for the gas only a portion of what the midstream purchaser receives from sale of such gas to an interstate pipeline after the midstream purchaser has performed some or all of the services described? 4) Whether Kaiser-Francis has deducted costs incurred to put gas in a marketable condition and whether those deductions are improper because of the lessee's duty to market? 5) Whether transportation expenses may properly be deducted from royalties? 6) Whether Kaiser-Francis is conducting a proper *Middelstaedt* analysis? 7) Whether Kaiser-Francis is calculating royalty payments on less than the actual sale price of its gas and whether Kaiser-Francis has a right to do so? 8) Whether Kaiser-Francis has the right to use percentages of gas and NGLs and condensate to pay third-party service providers or to retain the NGLs and condensate without paying royalty on those amounts of gas, NGLs and condensate? 9) Whether Kaiser-Francis breached the implied duty to market? and 10) Whether Kaiser-Francis violates the PRSA in the manner in which it reports sale prices and deductions on its check stubs to royalty owners? The Court finds that Plaintiffs can prove liability under their various claims with the exception of their fraud claims through common proof in a single adjudication, and the liability issues predominate over individualized damage determinations which, in the circumstances of this case, could be accomplished by mathematical computations. However, with respect to Plaintiffs' fraud claims, both actual and constructive, the Court concludes that determinations of when each putative class member discovered or should have discovered the alleged misrepresentations and omission on his or her check stub (as it affects not only acrual of their claims and when the limitations period began to run, but also his or her damages), reliance,

damages and punitive damages are individual questions, not subject to common proof, *see Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417 (4th Cir. 2003). *Andrews v. AT&T*, 95 F.3d 1014, 1025 (11th Cir. 1996), which predominate over the common question of whether Kaiser-Francis made misrepresentations and omissions on its check stubs to royalty owners. *See Basic Incorporated v. Levinson*, 485 U.S. 224, 242, 108 S.Ct. 478, 99 L.Ed.2d 194, 215 (1988)("Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action since individual issues then would have overwhelmed the common ones.").

Putative class members, each of whose royalty interests may be quite small, would have little incentive to prosecute their claims individually because their costs would likely exceed the value of their individual claims. Thus, class treatment is a superior option here because "the alternatives are either no recourse for thousands . . . to whom the courthouse would be out of bounds, or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *Green v. Wolfe Corp.*, 406 F.2d 291, 301 (2d. Cir. 1968). Kaiser-Francis has made the Court aware that a settlement of a royalty owners' class action against it involving three wells in Grady County has been effected as of April 30, 2004; that settlement of another royalty owners' class action against it involving approximately 100 wells in the Oklahoma panhandle principally in Texas and Beaver County, has been effected as of August 23, 2004; that Kaiser-Francis has obtained summary judgment in an individual royalty owner's action in Grady County; and that settlement of a statewide royalty owners' class action against Kaiser-Francis was effective in June of 2002.

However, this litigation has been resolved and covers different time periods or is limited geographically so such litigation doesn't provide alternative avenues for adjudication of the putative class members' claims herein. Because that litigation has been resolved by settlement and summary judgment, no clear threat of a multiplicity of actions and a risk of inconsistent adjudications exist. The fact that Defendant Kaiser-Francis cites to only one individual royalty owner's suit suggests that individual royalty owners do not view individual actions as practical or desirable and the fact that Defendant cites to three royalty owners' class actions suggests that common issues clearly predominate in this type of litigation. It makes sense and is desirable to conduct this litigation in Oklahoma, the situs of the wells and the location of the genesis of this dispute, even though not all of the royalty owners are Oklahoma residents. The identities of the class members are easily ascertained from Defendant's payment records and county registers of deeds. While difficulties in managing this class action have been brought to the Court's attention, "[m]anageability problems are significant only if they create a situation that is less fair and efficient than other available techniques." *Home-Stake Production Co. Securities Litigation*, 76 F.R.D. 351, 375 (N.D. Okla. 1977). A class action "would achieve [greater] economies of time, effort and expense, and promote [enhanced] uniformity of decisions as to persons similarly situated" than would individual actions. F.R.Civ.P. 23, Advisory Comm. Note (1966). The superiority prong of Rule 23(b)(3) is clearly established in this case.

## Conclusion

In accordance with the foregoing, Plaintiffs' motion for class certification [Doc. No. 56], except with respect to Plaintiffs' actual and constructive fraud claims, is GRANTED and the Court certifies this action as a class action pursuant to F.R.Civ.P. 23(a) and (b)(3), the class being defined as set forth at p.5 of this Order.

IT IS SO ORDERED this 9th day of June, 2010.

David L. Russell
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE